**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**RYAN ELDER, AS NEXT FRIEND OF C.E., A MINOR;**

***Plaintiff*,**

**v.**

**BEXAR COUNTY, TEXAS, SHERIFF JAVIER SALAZAR, IN HIS OFFICIAL CAPACITY; DEPUTY CLAUDIA GARZA, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; AND CORPORAL MARC PATINO, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;**

***Defendants*.**

**Case No. 5:25-CV-01252-JKP**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Bexar County, Sheriff Javier Salazar, Deputy Claudia Garza and Corporal Marc Patino's ("Defendants") Partial Motion to Dismiss, (*ECF No. 19*), brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Ryan Elder, proceeding individually and as next friend of Plaintiff C.E., filed a Response, (*ECF No. 21*), and Defendants filed a Reply, (*ECF No. 22*). After a careful review, the Court will grant Defendants' Partial Motion to Dismiss, (*ECF No. 19*), brought pursuant to Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

This case arises out of law enforcement officers' interactions with Plaintiff Ryan Elder and his son, Plaintiff C.E., following C.E.'s ingesting of hallucinogenic mushrooms. *See ECF No. 17*. According to Plaintiffs' allegations, these interactions violated Plaintiffs' constitutional rights, the Americans with Disabilities Act, the Rehabilitation Act, as well as Texas law. *Id*. As a result, Plaintiffs assert fourteen causes of action against Defendants Bexar County, Sheriff Javier Salazar, Deputy Claudia Garza ("Deputy Garza") and Corporal Marc Patino ("Corporal Patino").[1] *Id*.

Plaintiffs specifically assert the following causes of action:

(1) "Excessive Force," pursuant to 42 U.S.C. § 1983;

(2) "Unlawful Seizure/False Arrest," pursuant to 42 U.S.C. § 1983;

(3) "Deliberate Indifference to Serious Medical Needs," pursuant to 42 U.S.C. § 1983;

(4) "Retaliation for Protected Speech," pursuant to 42 U.S.C. § 1983;

(5) Violation of "Equal Protection" rights, pursuant to 42 U.S.C. § 1983;

(6) Violation of "Substantive Due Process," pursuant to 42 U.S.C. § 1983;

(7) "Failure to Intervene," pursuant to 42 U.S.C. § 1983;

(8) "Municipal liability," pursuant to 42 U.S.C. § 1983;

(9) "Disability Discrimination," pursuant to the Americans with Disabilities Act and the Rehabilitation Act;

(10) "Assault and Battery," pursuant to Texas common law;

(11) "False Imprisonment," pursuant to Texas common law;

(12) "Intentional Infliction of Emotional Distress," pursuant to Texas common law;

(13) "Civil Conspiracy," pursuant to Texas common law; and

[1] Plaintiffs also assert causes of action against Deputy James Green and Deputy Alexis Guerrero, although these two Defendants have not yet been served with process, nor have Plaintiffs requested summonses as to them.

(14) "Negligence," pursuant to the Texas Tort Claims Act.

*ECF No. 17* at 10–38.

Responding to Plaintiffs' Second Amended Complaint, Defendants Bexar County, Sheriff Javier Salazar, Deputy Garza, and Corporal Patino filed the instant Partial Motion to Dismiss, (*ECF No. 19*), brought pursuant to Federal Rule of Civil Procedure 12(b)(6). In the Motion, these Defendants move for dismissal of causes of action "numbered 3, 5, 6, and 8 through 14" for failure to state a claim *Id*. at 1. Thus, Defendants move to dismiss Plaintiffs' causes of action for:

(3) "Deliberate Indifference to Serious Medical Needs," pursuant to 42 U.S.C. § 1983;

(5) Violation of "Equal Protection" rights, pursuant to 42 U.S.C. § 1983;

(6) Violation of "Substantive Due Process," pursuant to 42 U.S.C. § 1983;

(8) "Municipal liability," pursuant to 42 U.S.C. § 1983;

(9) "Disability Discrimination," pursuant to the Americans with Disabilities Act and the Rehabilitation Act;

(10) "Assault and Battery," pursuant to Texas common law;

(11) "False Imprisonment," pursuant to Texas common law;

(12) "Intentional Infliction of Emotional Distress," pursuant to Texas common law;

(13) "Civil Conspiracy," pursuant to Texas common law; and

(14) "Negligence," pursuant to the Texas Tort Claims Act.

*ECF No. 17* at 10–38. Plaintiffs filed a Response, (*ECF No. 21*), and Defendants filed a Reply, (*ECF No. 22*). The Motion, (*ECF No. 19*), is therefore ripe for ruling.

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)")

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555–558, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether the plaintiff should be permitted to present evidence to support any adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8.

To warrant dismissal under Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp.2d 734, 737–38 (S.D. Tex. 1998). "Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he [or she] could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996). When reviewing the complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones*, 188 F.3d at 324).

## II. Qualified Immunity

As the Fifth Circuit recently explained:

> Qualified immunity shields government officials from civil liability in their individual capacity so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. It protects all but the plainly incompetent or those who knowingly violate the law. Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. Ultimately, the central concern is whether the official has fair warning that his [or her] conduct violates a constitutional right. We may decide which prong of the qualified immunity analysis to address first.

*McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 418–19 (5th Cir. 2023) (quotation marks and footnotes omitted). After the defendant properly invokes qualified immunity, the plaintiff bears the burden to rebut its applicability. *Kovacic v. Villareal*, 628 F.3d 209, 211 (5th Cir. 2010).

In the context of a motion to dismiss, the Fifth Circuit has explained that the court must determine whether the well-pleaded facts, viewed in the light most favorable to the plaintiff, establish a violation of clearly established law. *Stapleton v. Lozano*, 125 F.4th 743, 748 (2025). Legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement are not "well-pleaded" and thus need not be accepted as true. *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023); *Williams-Boldware v. Denton County*, 741 F.3d 635, 643–44 (5th Cir. 2014).

To demonstrate that a constitutional right was clearly established, the plaintiff must show the law was sufficiently clear at the time of the alleged misconduct, such that every reasonable official would have known that what the defendant did violated the constitutional right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The dispositive inquiry as to whether a right is clearly established is whether it would be clear to a reasonable officer that his or her conduct was unlawful in the situation he or she confronted. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in*

*part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established." *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (quotation marks omitted).

## ANALYSIS

The Court will consider in turn each of Defendants' arguments for dismissal of Plaintiffs' causes of action "numbered 3, 5, 6, and 8 through 14." *ECF No. 19* at 1.

### I. "Deliberate Indifference to Serious Medical Needs," pursuant to 42 U.S.C. § 1983

Where the claimed constitutional violation involves the Fourteenth Amendment right to medical care, a plaintiff must allege facts that, if proved, would show the arresting officers exhibited deliberate indifference to serious medical needs. *Carmona v. City of Brownsville*, 126 F.4th 1091, 1096–97 (5th Cir. 2025). "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). A plaintiff must plausibly allege the officers "(1) w[ere] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) actually drew the inference." *Sims v. Griffin*, 35 F.4th 945, 949–50 (5th Cir. 2022) (citation omitted).

In this context, serious harm is not "just any harm"; the medical need must be "so apparent that even laymen would recognize that care is required." *Rogers v. Jarrett*, 63 F.4th 971, 976 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 193 (2023). The officers must also have been subjectively aware of the "severity of [the plaintiff's] condition." *Id.* Alleging only that a defendant was aware that a potential for serious harm existed is insufficient. *Id.* at 976–77.

As for deliberate indifference, a showing beyond mere negligence—indeed, beyond even gross negligence—is required. *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020). "[A]n offi-

cial's failure to alleviate a significant risk that he [or she] should have perceived but did not, while no cause for commendation," does not amount to the requisite subjective knowledge. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). "Liability attaches only if officials actually knew—not merely should have known—about the risk." *Rogers*, 63 F.4th at 977 (citation omitted).

Plaintiffs' allegations in this regard are as follows:

> 11. **911 Call and Deputies' Arrival.** Concerned for C.E.'s safety, C.E.'s mother (Summer Garcia) dialed 911 and urgently requested "EMS only" with "no lights, no sirens" to avoid escalating his condition. She emphasized repeatedly that this was a medical emergency not a crime – and that C.E. was not a threat. She informed the dispatcher of C.E.'s acute mental impairment due to the medical crisis. Despite this explicit request, BCSO deputies (Defendants Garza and Patino) were dispatched and arrived at the home shortly before 4:00 a.m. They parked their patrol vehicles with emergency lights flashing, which flooded the home with lights and immediately agitated C.E.
>
> **12. Use of Force Against C.E.** Deputies Garza and Patino entered the home without a warrant or any exigent circumstances. They found C.E. sitting calmly on a couch between his parents. He was visibly anxious and disoriented, but he was not behaving aggressively and posed no threat. Deputy Garza asked C.E. what he had ingested; C.E. answered, "mushrooms." When Garza asked if he took anything else, C.E. mumbled, "You look goofy as fuck." Without any verbal warning, de-escalation attempt, or announcement of detention, Deputy Garza suddenly lunged at C.E. and grabbed his wrist. Startled, C.E. instinctively pulled back and swatted at Garza's hand, making brief contact. Immediately, Corporal Patino tackled C.E., forcing him face-down onto the floor and driving his knee into C.E.'s jaw and neck for approximately 93 seconds. Patino's weight on C.E.'s neck caused C.E. to have difficulty breathing. This takedown left C.E. with bruising on both sides of his jaw, a bloody nose, and significant pain, as later documented by hospital medical records.
>
> . . .
>
> 14. **Delay in Medical Aid (EMS Blocked).** Emergency Medical Services (EMS) personnel arrived in response to the 911 call and were staged nearby, but the BCSO deputies barred EMS from entering for an extended period (estimated around 20–30 minutes) while C.E. was handcuffed and locked in a patrol vehicle outside. Corporal Patino personally waved off paramedics multiple times, claiming the scene was "still hot," even though C.E. was already restrained and there was no ongoing threat. During this unnecessary delay, C.E.'s condition worsened

> – he began vomiting and ultimately lost consciousness due to the combined stress of the restraint and his medical crisis. Only after C.E. had lost consciousness did the deputies finally allow the paramedics to approach. At that point, EMS administered emergency sedatives (approximately 375 mg of Ketamine and 5 mg of Versed intramuscularly) to chemically subdue C.E. for safe transport. C.E. was then rushed to Methodist Children's Hospital. Medical records later confirmed multiple injuries (abrasions on his hands, facial contusions consistent with neck compression) and noted that C.E. had no clinical basis for a psychiatric detention or criminal charges – in other words, he had exhibited no violent conduct until the deputies initiated force.

*ECF No. 17* at 4–6.

Accepting Plaintiffs' allegations as true, Plaintiffs fail to state a plausible claim against Deputy Garza and Corporal Patino for deliberate indifference to C.E.'s serious medical needs. There are no plausible allegations that Deputy Garza and Corporal Patino (1) were subjectively aware C.E. needed emergency medical attention or was facing a substantial risk of serious harm if not seen by EMS for the estimated 20–30 minutes while C.E. was handcuffed and locked in a patrol vehicle and (2) effectively disregarded that risk. *ECF No. 17* at 5.

While Plaintiffs may have alleged sufficient facts to show Deputy Garza and Corporal Patino knew of C.E.'s altered mental state due to C.E.'s ingesting of hallucinogenic mushrooms and were aware of Corporal Patino's use of force on C.E., Plaintiffs do not show Deputy Garza and Corporal Patino were subjectively aware any injury posed a substantial risk of serious harm. There are no allegations demonstrating the nature of C.E.'s alleged injuries were "so apparent that even a laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *see ECF No. 17* at 4 (When Deputy Garza and Corporal Patino arrived "[t]hey found C.E. sitting calmly on a couch . . . He was visibly anxious and disoriented, but he was not behaving aggressively and posed no threat." . . . "Th[e] takedown left C.E. with bruising on both sides of his jaw, a bloody nose, and significant pain."). It is not enough that Deputy Gar-

za or Corporal Patino were aware a mere potential for serious harm existed or they "should have known" about the risk.[2] *Rogers*, 63 F.4th at 976–77.

Some of Plaintiffs' allegations also contain contradictions. For example, whether C.E. regained consciousness, after allegedly losing consciousness while handcuffed and locked in a patrol vehicle outside, and this is why EMS administered emergency sedatives is unclear. *ECF No. 17* at 4–6. However, it appears implausible EMS would need to "chemically subdue" C.E. if he remained unconscious. *Id*.

Finally, Plaintiffs' allegation that "[a]s a direct result of Defendants' deliberate indifference to C.E.'s serious medical needs, C.E. suffered worsened physical harm and pain [such that] his condition deteriorated and he had to undergo more aggressive intervention (including emergency injections) than might have been needed with timely care," lacks clarity and specificity. *Id*. at 15. Whether Plaintiffs' reference to C.E.'s condition deteriorating is connected to C.E.'s allegations relating to his mental health episode as a result of ingesting hallucinogenic mushrooms or Corporal Patino's use of force, or both, is unclear. *Id*.

Thus, because Plaintiffs fail to allege a violation of a constitutional right, Deputy Garza and Corporal Patino's Partial Motion to Dismiss, (*ECF No. 19*), will be granted in this regard. The court need not reach the other prong of qualified immunity—whether the right was clearly established at the time of the alleged violation.[3] *See Carmona*, 126 F.4th at 1100.

[2] As an additional example, Plaintiffs allege C.E. "was begging for air, vomiting, and then lost consciousness," but it is unclear when this occurred. *ECF No. 17* at 13. Specifically, it is unclear whether this occurred while C.E. was locked in a patrol vehicle outside, as that is where C.E. alleges he lost consciousness. *Id*. at 13–14. Plaintiffs therefore do not plausibly allege Deputy Garza and Corporal Patino were aware this occurred.

[3] The Court additionally notes, however, that Plaintiffs cite *Dyer v. Houston*, 964 F.3d 374 (5th Cir. 2020) for support. For reasons explained by the Fifth Circuit in *Cope v. Cogdill*, 3 F.4th 198, 209 n. 9 (5th Cir. 2021), the facts as alleged in this case are distinguishable from *Dyer*. Plaintiffs do not allege Deputy Garza and Corporal Patino "did nothing to secure medical help" or that C.E. was in "dire condition." *See Id*. Finally, like in *Cope*, the delay in this case was minutes, not hours. *See id*.

There can therefore be no liability for the County under *Monell* on the basis of this cause of action as alleged. *Windham v. Harris Cnty., Texas*, 875 F.3d 229, 253 (5th Cir. 2017). "[The Fifth Circuit has] stated time and again that '[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing.'" *Id*. (citing *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866–67 (5th Cir. 2012) (en banc) (alteration in original) (quoting *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir.1997))).

Thus, because Plaintiffs fail to demonstrate the existence of a constitutional violation on the basis of this cause of action as alleged, Bexar County's Partial Motion to Dismiss, (*ECF No. 19*), will also be granted in this regard.

## II. Violation of "Equal Protection" rights, pursuant to 42 U.S.C. § 1983

To state a claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff can either allege that "a state actor intentionally discriminated against him [or her] because of membership in a protected class," or that "he [or she] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Texas Dep't of Ins.—Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (citing *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999), *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). The latter is known as the "class of one" theory, which is the theory on which Plaintiffs base their claim here.

Thus, to establish that a plaintiff is a "class of one," he or she must show that he or she was intentionally treated differently from others who are similarly situated, and that there was no rational basis for the disparate treatment. *Holden v. Perkins*, 398 F. Supp. 3d 16, 25 (E.D. La. 2019) (citing *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007)). A complaint that "generally alleges that other similarly situated individuals were treated differently, but

. . . points to no specific person or persons and provides no specifics as to their violations" fails to state an equal protection claim. *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018).

Accepting Plaintiffs' allegations as true, Plaintiffs fail to state a plausible claim against Defendants for violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs do not sufficiently allege that C.E. has been treated differently from others similarly situated. Plaintiffs generally allege only "[o]n information and belief, other teenagers in Bexar County who are in medical crisis without having committed a crime are not normally handled in this punitive manner." *ECF No. 17* at 17. Plaintiffs therefore "point[] to no specific person or persons and provide[] no specifics as to their violations." *Rountree*, 892 F.3d at 685.

Though the Court takes factual allegations as true at the Rule 12(b)(6) stage, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Iqbal*, 556 U.S. at 678). An allegation that others are treated differently, without more, is merely a legal conclusion that the Court is not required to credit. *Id*.

The Court additionally notes that to distinguish acts particular to each party and particular to each asserted cause of action, "[a]t a minimum, [p]laintiffs should endeavor to explain what role each [d]efendant played . . . rather than grouping them together at all times." *Washington v. Patterson-UTI Energy, Inc.*, No. 5:16-CV-00130, 2016 WL 3081060, at *3 (W.D. Tex. May 31, 2016). Plaintiffs' allegations are directed "against all Defendants (individual capacities and Official Capacity of Sheriff/County)." *ECF No. 17* at 16–19. Within the text supporting this cause of action Plaintiffs similarly refer only to "Defendants." *ECF No. 17* at 16–19. This is insufficient. As is relying upon mere "information and belief" allegations. *McLin v. Twenty-First Jud. Dist.*, 614 F. Supp. 3d 278, 289 (M.D. La. 2022), *aff'd*, 79 F.4th 411 (5th Cir. 2023) (collecting cases).

Thus, because Plaintiffs fail to allege a violation of the Equal Protection Clause, Defendants' Partial Motion to Dismiss, (*ECF No. 19*), will also be granted in this regard.

**III. Violation of "Substantive Due Process," pursuant to 42 U.S.C. § 1983**

Although Plaintiffs separately assert a cause of action for "Municipal Liability," discussed below this section, Plaintiffs assert this cause of action for violation of "substantive due process" against Bexar County and Sheriff Salazar in his official capacity. *ECF No. 17* at 19–21.

42 U.S.C. § 1983 ("Section 1983") provides a cause of action against any "person" who, under the color of law, deprives another of a constitutional or federal statutory right. Relevant here, municipalities and local governments qualify as "persons" but may be sued under Section 1983 only when a "'deprivation of constitutional rights was inflicted pursuant to official custom or policy.'" *See Bryan v. City of Dallas*, 188 F. Supp.3d 611, 616 (N.D. Tex. 2016) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

To state a claim under Section 1983 against Bexar County, Plaintiffs must (1) allege "a constitutional violation"; (2) identify "an official policy or custom"; and (3) make "a showing that the official policy or custom was the operational force behind the constitutional violation." *Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694–95 (1978)).

Plaintiffs' allegations in this regard are as follows:

> 45. While C.E. was in custody at the Bexar County Juvenile Detention Center (following the incident on November 18, 2023), County employees administered multiple vaccines and medical tests to C.E., a minor, without Mr. Elder's knowledge or consent. These included a PPD tuberculosis skin test and injections for MMR, Hepatitis B, and Tetanus. **The County had a standard "blanket" policy or practice of giving such immunizations to juveniles upon intake, regardless of parental objections or individualized circumstances.** In C.E.'s case, there was no urgent medical necessity for these procedures – they were routine

> prophylactic measures, not emergency treatments. Yet County staff proceeded to inject C.E. solely because he was in their custody.

*ECF No. 17* at 19 (emphasis added).

Accepting Plaintiffs' allegations as true, Plaintiffs fail to state a plausible claim against Bexar County for violation of substantive due process. As to the second prong, to proceed beyond the pleading stage, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Pena v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018) (citing *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). Further, to plausibly plead a practice "so persistent and widespread as to practically have the force of law," a plaintiff must do more than describe the incident that gave rise to his or her injury. *Id.* (internal citation omitted).

Plaintiffs' allegations regarding any Bexar County official policy or custom are conclusory and do not include specific facts. Plaintiffs' allegations also only describe the events giving rise to his alleged injury and none are related to any Bexar County official policy or custom. This does not meet the pleading requirements of *Twombly* and *Iqbal*, or what is necessary to state a claim for municipal liability. Therefore, this cause of action must be dismissed.[4]

To the extent Plaintiffs also assert these claims against Sheriff Salazar in his official capacity, this cause of action must be dismissed as to him as well. Claims against a government agent in his or her official capacity may be dismissed as duplicative of the same claims made against the government entity itself. *See, e.g., Palo ex rel. Est. of Palo v. Dallas Cnty.*, 2006 WL 3702655, at *8 (N.D. Tex. Dec. 15, 2006) (dismissing Section 1983 claims against sheriff sued in his official capacity as duplicative of claims against county). Here, Plaintiffs' official-capacity claims against Sheriff Salazar are duplicative of their claims against Bexar County.

[4] *See also McCormick v. Stalder*, 105 F.3d 1059, 1061–62 (5th Cir. 1997) (citing *Turner v. Safley*, 482 U.S. 78, 89–90 (1987).

Thus, because Plaintiffs fail to allege a violation of substantive due process, Bexar County and Sheriff Salazar's Partial Motion to Dismiss, (*ECF No. 19*), will also be granted in this regard.

## IV. "Municipal liability," pursuant to 42 U.S.C. § 1983

As stated above, Plaintiffs separately assert a cause of action for "Municipal Liability." *ECF No. 17* at 22–26. Plaintiffs base these claims on "unconstitutional policies, failure to train, [and] ratification." *Id*. at 23. The Court addresses each in turn.

### A. Official Policies, Customs, or Practices

The Court repeats that to state a claim under Section 1983 against Bexar County, Plaintiffs must (1) allege "a constitutional violation"; (2) identify "an official policy or custom"; and (3) make "a showing that the official policy or custom was the operational force behind the constitutional violation." *Bellard*, 675 F.3d at 462 (citing *Monell*, 436 U.S. at 694–95).

Plaintiffs' allegations in this regard are as follows:

> [I]nterrelated policies or customs [] were the moving force behind the deprivations of Plaintiffs' rights, including:
>
> (1) "Handling mental-health 911 calls as law-enforcement incidents rather than emergencies";
>
> (2) "A custom of allowing deputies to block or delay EMS personnel until officers declare the scene 'secure,' even when no active threat exists";
>
> (3) "A policy or longstanding practice of administering routine medical procedures to minors in custody without parental consent"; and
>
> (4) "A custom of covering up officer misconduct and failing to hold officers accountable."

*ECF No. 17* at 22–26.

Accepting Plaintiffs' allegations as true, Plaintiffs fail to identify what non-duplicative constitutional violations are tied to these alleged official policies or customs. Plaintiffs do not

proceed *pro se* and have counsel; the Court therefore will not do counsel's work to adequately state a cause of action.[5]

Upon review of the Second Amended Complaint, the closest Plaintiffs get to identifying constitutional violations tied to these alleged policies or customs is stating these policies or customs caused "the violations of Plaintiffs' constitutional rights described above," presumably earlier in the Second Amended Complaint. *ECF No. 17* at 23. Plaintiffs' allegations leave the Court to make guesses, which the Court declines to do. The Court additionally notes that even under a liberal construction the allegations in this portion of the Second Amended Complaint are duplicative of other causes of action asserted against Bexar County, such as Plaintiffs' cause of action for "Deliberate Indifference to Serious Medical Needs," already addressed above.

Thus, because Plaintiffs do not spell out their arguments squarely and directly, Bexar County's Partial Motion to Dismiss, (*ECF No. 19*), will also be granted in this regard.

**B. Failure to Train**

To prevail on a failure to train claim, a plaintiff "must allege sufficient facts to show that (1) the municipality adopted inadequate training policy procedures, (2) acted with deliberate indifference in doing so, and (3) the inadequate training policy directly caused the plaintiff's injury." *See Speck v. Wiginton*, 606 Fed. App'x. 733, 736 (5th Cir. 2015) (unpublished) (citing *Sanders–Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)).

Dismissal of Plaintiffs' conclusory failure to train claim here is proper for at least two reasons. First, the allegations do not satisfy the first element because Plaintiffs allege no facts

[5] *See, e.g.*, *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) ("[A]s a general rule our system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" (second alteration in original) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment))); *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones . . . . [A] litigant has an obligation to spell out its arguments squarely and directly . . . . ").

about Bexar County's actual training program. Complaints typically satisfy the first element by alleging facts related to the locality's actual training program.[6] Plaintiffs instead make only the conclusory allegation "BCSO provided insufficient training on de-escalation, recognizing medical emergencies, and respecting the rights of vulnerable subjects." *ECF No. 17 at 24*. Plaintiffs provide no factual allegations about the content of Bexar County's actual training program, how thorough or cursory it may have been, or even if one exists at all. Plaintiffs are thus asking the Court to make the inference that a single alleged incident of alleged misconduct means officers are inadequately trained. "That inference is at odds with the law against *respondeat superior* liability in section 1983 cases, which is a rule premised on the common sense proposition that officer misconduct is often a result of the independent decisions of officers rather than direction from superiors." *Speck*, 606 Fed. App'x at 736; *Sanders-Burns*, 594 F.3d at 380.

Similar reasoning demonstrates Plaintiffs also fail to raise sufficient factual allegations to meet the deliberate indifference standard. A "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). No such pattern is alleged here, other than in a conclusory manner. *See ECF No. 17* at 24 ("Despite prior complaints, the County did not discipline or re-train deputies like Garza and Patino, who had engaged in aggressive behavior in the past (on information and belief))." An exception may exist if a plaintiff's injury is a "patently obvious" or "highly predictable" result of inadequate training, and Plaintiffs assert for the first time in their Response that rare exception applies to this case. *See Connick*, 563 U.S. at

[6] *See, e.g., Burge v. St. Tammany Parish,* 336 F.3d 363, 369 (5th Cir. 2003) (evaluating the longstanding practice of failing to maintain sheriff's records and provide them to defendants in context of claim challenging failure to train record keepers); *Beard v. Harris Cnty.,* No. 4:04-CV-01982, 2005 WL 2647972 at *3 (S.D. Tex. Oct.17, 2005) (considering the guidelines promulgated in the Standard Operating Procedures of the Harris County Precinct Five Constables Department); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (explaining that "a plaintiff must allege with specificity how a particular training program is defective" and "cannot prevail by styling their complaints about the specific injury suffered as a failure to train claim").

63–64 (describing so-called "single-incident liability" as rare); *Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24 (1985). The Fifth Circuit has consistently rejected nearly every attempt to use the single incident exception to demonstrate a constitutionally inadequate training program.[7]

Here, Plaintiffs do not clear the high hurdle to use the single incident exception. The Fifth Circuit has stated the single incident exception is "extremely narrow, and as an exception to the pattern requirement, it is generally reserved for those cases in which the government actor was provided *no training whatsoever*." *Edwards v. City of Balch Springs, Texas*, 70 F.4th 302, 312–13 (5th Cir. 2023) (emphasis added).[8] Indeed, the Fifth Circuit has further stated an allegation the government actor was provided "no training whatsoever" is critical to surviving a motion to dismiss when relying on the single incident exception. *Littell v. Houston Independent School District*, 894 F.3d 616, 626–27 (5th Cir. 2018) (citing *Connick*, 563 U.S. at 64). Plaintiffs contradict this requirement by referring to "insufficient training" and "re-train[ing]." *ECF No. 17* at 24. Even if these allegations had not been included by Plaintiffs, however, it would still fail. The Fifth Circuit has noted "there is a difference between *a complete failure to train* . . . and a failure to train in one limited area." *Cozzo v. Tangipahoa Parish Council—President Government,* 279 F.3d 273, 288 (5th Cir. 2002) (emphasis original); *see also Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 386 (5th Cir. 2005).

[7] *See Carmona v. City of Brownsville*, No. 1:23-CV-00084, 2023 WL 10366692 at *6 (S.D. Tex. Aug. 16, 2023), *R. & R. adopted*, No. 1:23-CV-00084, 2024 WL 472340 (S.D. Tex. Feb. 6, 2024), *aff'd*, 126 F.4th 1091 (5th Cir. 2025) (collecting twenty-nine Fifth Circuit cases).

[8] *E.g.*, *Chavez v. Brownsville Indep. Sch. Dist.*, No. 1:18–CV–00173, 2023 WL 7312515 at *9–10 (S.D. Tex. Sept. 28, 2023), *aff'd sub nom. Chavez as next friend for J.C. v. Brownsville Indep. Sch. Dist.*, No. 23-40640, 2025 WL 445045 (5th Cir. Feb. 10, 2025); *Neri v. City of San Benito, Texas*, No. 1:23-CV-00156, 2024 WL 4156718 at *5 (S.D. Tex. Aug. 22, 2024), *R. & R. adopted*, No. 1:23-CV-00156, 2024 WL 4149768 (S.D. Tex. Sept. 11, 2024); *Carmona*, 2023 WL 10366692 at *4; *McAlister v. Mgt. and Training Corp.*, No. 5:22-CV-00090, 2024 WL 4328897 at *6 n.2 (S.D. Miss. Apr. 29, 2024), *R. & R. adopted*, No. 5:22-CV-00090, 2024 WL 4751586 (S.D. Miss. Nov. 12, 2024); *Soto v. Monge*, 735 F. Supp. 3d 792, 809 (W.D. Tex. 2024); *Oliveria v. City of Jersey Village*, No. 4:21-CV-03564, 2023 WL 7222124 at *5 (S.D. Tex. Nov. 2, 2023).

Thus, because Plaintiffs do not allege Bexar County provided Deputy Garza and Corporal Patino no training whatsoever and appears to acknowledge they received some training, Bexar County's Partial Motion to Dismiss, (*ECF No. 19*), will also be granted in this regard.

**C. Ratification**

Ratification theory generally requires that a policymaker knowingly approve, not just a subordinate's actions, but also the improper basis for those actions. *Covington v. City of Madisonville*, 812 F. App'x 219, 228 (5th Cir. 2020) (per curiam) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Unless conduct is "manifestly indefensible," a policymaker's mistaken defense of a subordinate who is later found to have broken the law is not ratification chargeable to the municipality. *Id.* (quoting *Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir. 1986) (quotations omitted)). The Fifth Circuit's "precedent has limited the theory of ratification to 'extreme factual situations.'" *Peterson v. City of Ft. Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)).

The quintessential case is that of *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), where a municipality was found liable upon ratifying the conduct of officers who "poured" gunfire on a truck, killing an innocent occupant. In *Grandstaff*, the "officers and their supervisors . . . denied their failures and concerned themselves only with unworthy, if not despicable, means to avoid legal liability." *Id.* at 166.

Here, there is nothing from the pleadings to suggest the incident at issue presents an extreme factual situation within the meaning of applicable precedent. *See Peterson*, 588 F.3d at 848; *see also Reed v. City of Lago Vista*, 2022 WL 432563, at *4–5 (W.D. Tex. Feb. 10, 2022), *R. & R. adopted*, 2022 WL 22257843 (W.D. Tex. Mar. 11, 2022). Moreover, Plaintiffs do not respond to this argument from Defendants in their Response. *See ECF No. 21*.

The Court additionally notes that "[w]hile the mere failure to investigate a police officer's conduct that allegedly violated a person's Fourth Amendment rights cannot amount to ratification, the converse must also be true: [t]he mere decision to investigate and exonerate also cannot amount to ratification." *Griffin v. City of Sugar Land*, No. 4:18-CV-03121, 2019 WL 175098, at *12 (S.D. Tex. Jan. 11, 2019). "To hold the city liable because the policymaker concluded that the officers acted appropriately would [improperly] convert liability through ratification into *respondeat-superior* liability." *Id.* (citation omitted). Moreover, the ratification theory must be applied with the understanding that "[p]olicymakers alone can create municipal liability, and so any violation must be causally traceable to them, not just to their subordinates."[9] In the present case, Plaintiffs allege "[a]fter reviewing Internal Affairs' investigation of C.E.'s incident, Sheriff Salazar publicly stated that the deputies 'acted appropriately' and imposed no punishment or corrective measures." *ECF No. 17* at 25. As the sole basis for this cause of action, dismissal is, therefore, appropriate.

Thus, because Plaintiffs do not show Sheriff Salazar had actual knowledge of any improper basis for the officers' decisions, Bexar County's Partial Motion to Dismiss, (*ECF No. 19*), will also be granted in this regard. *E.g., Miller v. City of Texas City, Texas*, No. 3:18-CV-00284, 2019 WL 2189262 (S.D. Tex. May 21, 2019), *R. &R. adopted*, No. 3:18-CV-00284, 2019 WL 3082951 (S.D. Tex. July 15, 2019).

## V. "Disability Discrimination," pursuant to the Americans with Disabilities Act ("ADA") and the Rehabilitation Act[10]

[9] *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004); *see also Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001) (refusing to impose liability based on policymaker's approval of a subordinate's decision without a showing that the policymaker had actual knowledge of the improper basis of the subordinate's decision); *Fraire v. City of Arlington,* 957 F.2d 1268, 1278–79 (5th Cir. 1992) (holding that an unconstitutional custom or policy "cannot be inferred from a municipality's isolated decision not to discipline a single officer for a single incident of illegality") (internal quotation marks and citations omitted).

[10] The Court will adjudicate and refer to the ADA and Rehabilitation Act claims collectively as the "ADA claims" below. *See D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010) ("Because this court

"Title II of the ADA provides [] 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (quoting 42 U.S.C. § 12132).

In the present case, although Plaintiffs' briefing is not particularly clear, Plaintiffs appear to be pursuing failure-to-accommodate claims.[11] "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he [or she] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015).

"Plaintiffs ordinarily satisfy the knowledge element by showing that they identified their disabilities as well as the resulting limitations to a public entity or its employees and requested an accommodation in direct and specific terms." *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020). "When a plaintiff fails to request an accommodation in this manner, he [or she] can prevail only by showing that 'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." *Id.* at 317–18 (quoting *Windham v. Harris County*, 875 F.3d 229, 237 (5th Cir. 2017)).

Here, Plaintiffs do not meet this standard. The Court assumes *arguendo* C.E. is a qualified individual with a disability under the ADA. *See ECF No. 17* at 26–27 ("At the time of the incident, C.E. had an acute mental impairment caused by intoxication – essentially a temporary

---

has equated liability standards under § 504 [of the Rehabilitation Act] and the ADA, we evaluate [Plaintiff's] claims under the statutes together.").

[11] *See ECF No. 17* at 26–29 ("C.E. could have been accommodated with reasonable modifications to standard law enforcement procedures – for example, by treating the situation as a medical matter, employing calming techniques, or involving specialized officers – without fundamentally altering the nature of the service"; "The County failed to make reasonable modifications to its normal procedures"; "[T]he County's officers consciously chose not make any accommodations").

psychotic delirium – that was openly apparent to the deputies and was communicated by his parents.") The Court additionally notes, however, "[t]he terms disability and qualified individual with a disability do not include individuals currently engaging in the illegal use of drugs." 29 C.F.R. § 1630.3. The Court further notes hallucinogenic substances are listed as Schedule I Substances under 21 U.S.C. § 812. Plaintiffs admit C.E. ingested hallucinogenic mushrooms, but the type is unclear.

Still, assuming Plaintiffs allegations are sufficient to meet the first prong, Plaintiffs plead no facts to show C.E. requested an accommodation or that his alleged disability and limitations were known by the covered entity.

Plaintiffs' allegations in this regard are as follows:

> In the early morning hours of November 18, 2023, Plaintiff C.E., a 16-year-old minor, ingested hallucinogenic mushrooms at his family home in Bexar County, Texas. This triggered an acute psychotic state characterized by paranoia, disorientation, and erratic (but non-violent) behavior, constituting a serious medical emergency requiring immediate mental-health intervention and creating risks of self-harm or cardiac arrest.

*ECF No. 17* at 3. C.E. does not allege he identified his alleged disability or resulting limitations; nor does he allege that he requested any of his accommodations "in direct and specific terms" to the officers. *See Smith*, 956 F.3d at 317. The Court additionally notes C.E. does not allege he requested "the County . . . dispatch a Crisis Intervention Team officer or adopt a calming approach." *ECF No. 17* at 27.

Having failed to make such requests, Plaintiffs can "prevail only by showing that 'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." *See id.* at 317–18 (quoting *Windham*, 875 F.3d at 237). The Fifth Circuit has identified several well-understood and outwardly visible disabilities, including blindness, deafness, or being wheelchair-bound. *Windham,* 875 F.3d at 238.

Plaintiffs' allegations in this regard are as follows:

> At the time of the incident, C.E. had an acute mental impairment caused by intoxication – essentially a temporary psychotic delirium – that was openly apparent to the deputies and was communicated by his parents. This impairment substantially limited one or more of C.E.'s major life activities (e.g., cognitive function, self-control) during the episode. Although temporary, it was not minor in severity. The deputies certainly perceived C.E. to have a mental condition (beyond just being a typical arrestee).

*ECF No. 17* at 3. C.E. does not explain how his "acute mental impairment caused by intoxication" was openly apparent to the deputies, what "was communicated by his parents" to the deputies, or how "the deputies certainly perceived C.E. to have a mental condition." *Id.*; *e.g.*, *Rubin v. De La Cruz*, No. 24-20015, 2025 WL 764603, at *4 (5th Cir. Mar. 11, 2025) ("Plaintiffs also fail to explain, given the various deficiencies in their claims, how Turner's disability, associated limitation, or accommodation is 'open, obvious, and apparent.'"). Plaintiffs do not show C.E's disability *and* limitations were known by Bexar County, therefore their failure-to-accommodate claims under the ADA and Rehabilitation Act are inadequate.

Thus, based on these deficiencies, Bexar County's Partial Motion to Dismiss, (*ECF No. 19*), will also be granted in this regard.

## VI. "Assault and Battery," "False Imprisonment," "Intentional Infliction of Emotional Distress," "Civil Conspiracy," pursuant to Texas common law

In addition to their federal constitutional claims, Plaintiffs assert common law claims for assault and battery, false imprisonment, intentional infliction of emotional distress, and civil conspiracy against Deputy Garza and Corporal Patino. *ECF No. 17* at 29–36. Deputy Garza and Corporal Patino respond by arguing Plaintiffs are barred from asserting intentional tort claims under the Texas Tort Claims Act ("TTCA"). *ECF No. 19* at 15–18.

Section 101.106(f) of the TTCA "provides a governmental employee with statutory immunity from suit when he or she is sued for a tort that '(1) is based on conduct within the general

scope of the employee's employment and (2) could have been brought under the Act against the governmental unit.'" *Gomez v. Massey*, No. 3:18-CV-00348, 2019 WL 4034319, at *2 (S.D. Tex. Aug. 27, 2019) (citing *Garza v. Harrison*, 574 S.W.3d 389, 399–400 (Tex. 2019)). When these conditions are met, § 101.106(f) "mandates[ ] plaintiffs to pursue lawsuits against governmental units rather than their employees," and "entitles the employee 'to dismissal' of the relevant tort claim[.]" *Wilkerson v. Univ of N. Texas By & Through Bd. of Regents*, 878 F.3d 147, 159 (5th Cir. 2017) (citations omitted). On the employee's motion, the court must dismiss the claims against the employee unless the plaintiff "files amended pleadings dismissing the employee and naming the governmental unit . . . on or before the 30th day after the date the motion is filed." *Graham v. Dallas Area Rapid Transit*, 288 F. Supp. 3d 711, 747 (N.D. Tex. 2017) (citing *Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014)).

All tort claims alleged against a governmental entity and its employees are assumed to arise under the TTCA for purposes of Section 101.106. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008); *Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011). Thus, the second prong of § 101.106(f) asks "not whether [the plaintiff] can succeed on the merits, but whether his [or her] claim sounds in tort." *Wilkerson*, 878 F.3d at 162 (citing *Franka*, 332 S.W.3d at 381) (noting that a cause of action "could have been brought under the Act" if the "claim is in tort and not under another statute that independently waives immunity.")).

Here, Plaintiffs' claims of assault and battery, false imprisonment, intentional infliction of emotional distress, and civil conspiracy are all Texas common law claims sounding in tort.[12] Thus, these claims "could have been brought" under the TTCA against Bexar County.[13] The

---

[12] *E.g.*, *Hunter v. City of Rice Police Dept.*, No. 3:25-CV-00451, 2026 WL 871721, at *3–4 (N.D. Tex. Mar. 13, 2026), *R. & R. adopted*, No. 3:25-CV-00451, 2026 WL 870714 (N.D. Tex. Mar. 30, 2026).

[13] *See Jimerson v. Lewis*, No. 3:20-CV-2826, 2021 WL 1566463, at *4 (N.D. Tex. Apr. 1, 2021), *R. & R.. adopted*, 2021 WL 1561431 (N.D. Tex. Apr. 21, 2021) ("[U]nless the suit is brought against a governmental employee

sole remaining question, therefore, is whether the alleged conduct occurred within the scope of Deputy Garza and Corporal Patino's employment.

The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code § 101.001(5). Texas courts have interpreted this definition broadly, holding that an employee's conduct is within the scope of employment if the acts are "of the same general nature as the conduct authorized or incidental to the conduct authorized." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007). The scope-of-employment inquiry therefore "focuses on whether the employee was doing his [or her] job, not on the quality of the job performance." *Garza*, 574 S.W.3d at 394. Even when performed "wrongly or negligently," conduct is within the scope of employment "if, when viewed objectively, a connection exists between the employee's job duties and the alleged tortious conduct." *Id.* (cleaned up).

Plaintiffs' allegations against Deputy Garza and Corporal Patino, taken as true, describe only conduct performed within the scope of their employment. *ECF No. 17* at 29–36. Conduct is not outside the scope of employment simply because it was unauthorized or wrongful. *Jackson v. Texas S. Univ.*, 31 F. Supp.3d 884, 889 (S.D. Tex. 2014) (citing *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 286 (5th Cir. 1999)). Rather, conduct falls within the scope of employment if it (1) is the kind the employee is employed to perform, (2) occurs substantially within the authorized time and space limits, and (3) is actuated, at least in part, by a purpose to serve the employer—even if the employee uses "forbidden means" to accomplish that purpose. *Id.* None of Plaintiffs' allegations plausibly suggest Deputy Garza and Corporal Patino's

under a statute that independently waives immunity, the second prong 'for section 101.106 is virtually always satisfied.'") (quoting *Gomez v. Massey*, No. 3:18-CV-00348, 2019 WL 4034319, at *4 (S.D. Tex. Aug. 27, 2019)).

presence or actions were wholly detached from their law enforcement duties. *See generally ECF No. 17*. The alleged torts occurred during Deputy Garza and Corporal Patino's investigation in response to a 911 call, following C.E.'s ingesting of hallucinogenic mushrooms. *See ECF No. 17*. Thus, even if they used excessive or unlawful force, their conduct remains within the scope of employment under Texas law.[14] Notably, the case cited by Plaintiffs in their Response supports this proposition. *See ECF No. 21* at 6 (citing *Alexander v. Walker*, 435 S.W.3d 789 (Tex. 2014)).

Because both requirements of § 101.106(f) are satisfied, Deputy Garza and Corporal Patino are entitled to immunity from Plaintiffs' tort claims against them. Therefore, Plaintiffs' claims of assault and battery, false imprisonment, intentional infliction of emotional distress, and civil conspiracy are barred and will be dismissed with prejudice. *See Jimerson*, 2021 WL 1561431, at *1 (holding that dismissal with prejudice is proper where the plaintiff failed to amend the complaint within 30 days to substitute the governmental employer as required by § 101.106(f)).

Thus, Deputy Garza and Corporal Patino's Partial Motion to Dismiss, (*ECF No. 19*), will also be granted in this regard. *E.g.*, *Hunter v. City of Rice Police Dept.*, No. 3:25-CV-00451, 2026 WL 871721 (N.D. Tex. Mar. 13, 2026), *R. & R. adopted*, No. 3:25-CV-00451, 2026 WL 870714 (N.D. Tex. Mar. 30, 2026).

## VII. "Negligence," pursuant to the Texas Tort Claims Act

Plaintiffs also assert a cause of action against Bexar County for negligence under the Texas Tort Claims Act ("TTCA"). *ECF No. 17* at 36–38. Specifically, Plaintiffs allege "[t]he

[14] *See, e.g., Howard v. City of Houston*, No. 21-CV-1179, 2022 WL 2106466, at *4 (S.D. Tex. June 10, 2022) (alleged assault during arrest arose from officers' performance of duties and was barred by the TTCA); *Alexander v. Walker*, 435 S.W.3d 789, 791–92 (Tex. 2014) (same); *Rohlf v. Ibarra*, No. 23-CV-00178, 2024 WL 2857017, at *2 (Tex. App. June 6, 2024) (same).

BCSO deputies negligently used handcuffs and a patrol vehicle in detaining C.E." *Id.* at 37. Plaintiffs further allege "County medical staff negligently used hypodermic syringes and needles to inject C.E. with immunizations without obtaining consent or considering his mental state." *Id.* at 37.

The TTCA waives immunity for injuries caused by the negligent use of tangible property, stating:

> A governmental unit in the state is liable for . . . personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code § 101.021(2). This limited waiver does not apply to intentional torts, however. *Id.* § 101.057. Thus, to sue a governmental unit under the TTCA's limited waiver, a plaintiff may allege an injury caused by negligently using tangible personal property, *U. of Texas Med. Branch at Galveston v. York*, 871 S.W.2d 175, 178 n.5 (Tex. 1994), but to be viable, the claim cannot arise out of an intentional tort, *Tex. Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575, 580 (Tex. 2001).

In the present case, the Texas Supreme Court has held asserting an injury from a police officer's alleged misuse of handcuffs is equivalent to an action for battery, rather than negligence, and therefore governmental immunity is not waived. *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014); *e.g.*, *City of Laredo, Appellant v. Jorge Cigarroa, Appellee*, No. 04-25-00231-CV, 2026 WL 2661975 (Tex. App.—San Antonio Sept. 9, 2026). The same is true when a vehicle itself is not operated in a manner that causes injury. *Hardin Cnty. Sheriff's Dept. v. Smith*, 290 S.W.3d 550, 553 (Tex. App.—Beaumont 2009) (collecting cases).

The Court additionally notes that Plaintiffs' allegations relating to the use of hypodermic syringes and needles more closely resembles a medical battery action. *Benge v. Williams*, 472

S.W.3d 684 (Tex. App.—Hous. [1st Dist.] 2014), *aff'd*, 548 S.W.3d 466 (Tex. 2018) ("Medical battery is defined as performing a medical act or treatment on a patient without consent."); *see also Miller ex rel. Miller v. HCA, Inc.*, 118 S.W.3d 758, 767 (Tex. 2003) ("the general rule in Texas is that a physician who provides treatment without consent commits a battery"); *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) ("Medical treatment will not constitute a battery unless it is provided without the patient's consent."). Still, even construing these allegations as a lack of informed consent, "claims regarding the failure to receive informed consent do not fall within a waiver provision of the [TTCA]." *Texas Tech U. Health Scis. Ctr.-El Paso v. Bustillos*, 556 S.W.3d 394, 403 (Tex. App.—El Paso 2018).

Thus, based on these deficiencies, Bexar County's Partial Motion to Dismiss, (*ECF No. 19*), will also be granted in this regard.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants' Partial Motion to Dismiss, (*ECF No. 19*), brought pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED**.

The following causes of action remain:

(1) "Excessive Force," pursuant to 42 U.S.C. § 1983;

(2) "Unlawful Seizure/False Arrest," pursuant to 42 U.S.C. § 1983;

(4) "Retaliation for Protected Speech," pursuant to 42 U.S.C. § 1983

(7) "Failure to Intervene," pursuant to 42 U.S.C. § 1983.

It is so ORDERED.
SIGNED this 21st day of September, 2026.



JASON PULLIAM
UNITED STATES DISTRICT JUDGE